# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**PHYLLIS RENEE WILLAMS,**

> **Plaintiff,**

v.                                          **Case No.  8:03-cv-2561-T-30MAP**

**JPI JONES PHARMACEUTICAL, et al,**

> **Defendants.**

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. #53) and Plaintiff's response thereto (Dkt. #55).  Defendants[1] move for summary judgment on Plaintiff's claims of hostile work environment, failure to promote, disparate pay, and retaliation, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. as amended ("Title VII"), the Florida Civil Rights Act of 1992, Fla. Stat. 760 et seq. ("FCRA") and Chapter 70 of the Pinellas County Code of Ordinances ("Chapter 70").[2]  A hearing on the Motion was held on July 13, 2005.  After consideration,

---

[1] Plaintiff filed this action against JPI Jones Pharmaceuticals, King Pharmaceuticals,.  These entities succeeded one another as Plaintiff's employer during all relevant periods.  Thus, they have been treated collectively for purposes of this litigation by the parties and this Court.

[2] Both parties' rely exclusively on federal law under Title VII in support of their respective arguments.  The 11th Circuit has recognized the parallels between Title VII and the FCRA, and acknowledged that federal case law is applicable to employment discrimination claims arising under Florida law.  See e.g., Maniccia v. Brown, 171 F.3d 1364, 1368 n.2. (11th Cir. 1999) (citing Florida Dept. of Comm. Affairs v. Bryant, 586 So.2d 1205, 1209 (Fla. Dist. Ct. App. 1991).  Accordingly, this Court's analysis is similarly based on established legal principles set forth in Title VII and federal case law.

this Court finds that Defendants' Motion should be GRANTED in part and DENIED in part.

Plaintiff has worked in Defendants' Quality Control department since January 1996. Her hostile work environment claim arises out of alleged racial discriminatory remarks and conduct that have occurred at the Defendants' pharmaceutical facility where she works. Plaintiff relies on fifteen (15) workplace incidents that have occurred since she began working for Defendants to support her claim:

> (1) a derogatory racial joke about Plaintiff made sometime before 1998 by the manager of packaging;
>
> (2) a derogatory racial comment made about Plaintiff in 1997 by her supervisor at the time, Nick Malure;
>
> (3) a derogatory racial joke made sometime before 1998 about a young, illiterate, African-American man that three co-workers scattered throughout the office, including on Plaintiff's desk;
>
> (4) a racial joke left in the company cafeteria during the spring of 1998;
>
> (5) remarks made during the summer of 1998 by the Vice-President of Operations, Barbara Strauss, asking managers at a meeting whether they would be offended if she told a "black joke;"
>
> (6) a comment made  in or about 1998 by Defendant's Human Resources director, Barbara Defoe, that she was going to "Magic Johnson" employment applications from African-American applicants into the trash can;
>
> (7) an accident sometime between late 1998 and 2000 involving a forklift, driven by an unidentified white employee working in the "blending crew," that struck Plaintiff's unoccupied truck;
>
> (8) supervisors in two of Defendants' other departments openly laughing about the forklift incident in Plaintiff's presence immediately after it occurred;

(9) the deliberate placing of nails and screws behind her tires by an unknown employee sometime between 1998 and 2000;

(10) a million man march newspaper clipping containing colored-in faces of African-American men Plaintiff found in the cafeteria at some unknown time;

(11) a remark made by Plaintiff's supervisor, Bob Satterfield, in or about 2000 that Plaintiff had "too many blacks in her department;"

(12) commands by Bob Satterfield to Plaintiff in a meeting in December 2000 that Plaintiff "shut the fuck up" and that she was "fucking fired;"

(13) a demand by Bob Satterfield that Plaintiff return home and remove a shirt that she was wearing that contained the label "FUBU" because it was "racist;"

(14) a meeting between Barbara Defoe, Elaine Strauss and Bob Satterfield in or about 2000 during which Barbara Defoe inquired as to "how many blacks" Plaintiff needed in her department and Elaine Strauss and Bob Satterfield laughed in response; and

(15) managerial meetings up until 2003 with Bob Satterfield, Barbara Strauss, and Nick Malure during which she was "ostracized" by having to sit during the meeting without anyone next to her.

To establish a hostile work environment claim based on racial harassment, an employee must demonstrate, *inter alia*, that (i) the racial harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment, and (ii) the employer is responsible for such an environment under either a theory of vicarious liability or of direct liability. See e.g., Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). Hostile work environment claims involve both a subjective and objective component: "the employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions

of the employment, and this subjective perception must be objectively reasonable." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir.1999).  In analyzing the objective component of these claims, the Supreme Court held that courts should consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the plaintiff's job performance.  See id. at 1276; Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997).

Applying these standards to the facts of this case, this Court finds that Plaintiff has failed to set forth sufficient facts to survive Defendants' summary judgment motion.  As an initial matter, many of the incidents Plaintiff identifies were performed over a number of years by different co-workers who lacked supervisory authority over Plaintiff and were never reported by her to be acts of racial harassment.  Because employers are not responsible for acts for which they do not have actual or constructive knowledge, the Defendants can not be held responsible for these incidents.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002) (distinguishing between actions of a supervisor and a co-employee, and holding that employer's are liable for harassment by a co-employee where the victim demonstrates "either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge").  Defendants also are not responsible for at least one of the harassing incidents Plaintiff reported because it is undisputed that they addressed the problem to the satisfaction of the Plaintiff promptly thereafter.

Even assuming Defendants could be held responsible for all of the incidents Plaintiff raises in support of her claim, the acts of harassment based on race occurring at its facility were too infrequent, isolated and, insufficiently severe to alter the terms and conditions of Plaintiff's employment.   At least five of the fifteen incidents Plaintiff raises can not be considered harassment based on race.[3] Ten harassing incidents by different employees since 1996 can hardly be considered "pervasive."  Cf, Mendoza v. Borden, Inc., 195 F.3d 1238, 1245-1249 (11th Cir.1999) (finding five instances of sexual harassment over an eleventh month period to be far too infrequent to alter the terms and conditions of employment). Moreover, many of these incidents that could be characterized as racially discriminatory were made outside Plaintiff's presence and simply relayed to her from other employees sometime after they had occurred or were not directed at Plaintiff personally.[4]  Such occurrences are less severe, threatening, and humiliating than any that involved Plaintiff personally or that she actually observed take place.[5]

---

[3]  Plaintiff failed to present any evidence to support the inference that the placement of nails and screws under her tires and the failure of others to sit right next to her during managerial meetings were acts of racial hostility. Plaintiff also did not present any evidence to refute Defendants' determination that the damage to her truck caused by the forklift was an accident.  Moreover, she admitted during her deposition testimony that the laughing that occurred thereafter did not "have anything to do with her race."  Plaintiff also admitted that Bob Satterfield yelled at her during the December 2000 meeting after she had corrected him in front of their subordinates and that there were no "racial overtones" to his comments.

[4]  These incidents were the unidentified racial joke left in the cafeteria, the derogatory racial joke about the illiterate African-American man by three of her co-workers, the million man march newspaper clipping, the comment by Barbara Strauss that she wanted to tell a "black joke," the "Magic Johnson" comment by Barbara Defoe, the "too many blacks" comment by Bob Satterfield, and the meeting between these three individuals when the number of blacks in Plaintiff's department was addressed.

[5]  The only incidents Plaintiff personally observed and that were directed at her were Nick Malure's derogatory racial comment about Plaintiff, the derogatory racial joke about Plaintiff made by the packaging
(continued...)

The shameful and inconsiderate acts that Plaintiff has identified are certainly offensive and should not be tolerated, but they were not sufficiently severe to alter the terms and conditions of her employment. See, e.g., Brown v. Coach Stores, Inc., 163 F.3d 706, 713 (2d Cir. 1998) (holding occasional offensive remarks insufficient); Ngeunjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998) (stating scattered and isolated racial comments insufficient); Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998) (concluding two racially offensive comments over two year period insufficient); Shabat v. Blue Cross Blue Shiled, 925 F.Supp. 977, 984 (W.D.N.Y. 1996) (finding occasional brief comments insufficient); Bennett v. New York City Dept. of Corrections, 705 F.Supp. 979, 983 (S.D.N.Y. 1989) (holding one racial statement insufficient).  Defendants, therefore, are entitled to summary judgment on Plaintiff's hostile work environment claim.

Plaintiff's failure to promote claims arise out of Defendants's decision to award Bob Satterfield the position of Senior Quality Control Director instead of promoting her to Quality Control Director, and their decision to promote all their employees operating in a supervisory capacity, except Plaintiff, to "manager" after previously demoting them to "supervisor" positions.  A failure to promote claim is established upon a showing that (1) the plaintiff belongs to a protected group; (2) the plaintiff sought and was qualified for the promotion; (3) the plaintiff was rejected despite her qualifications; and (4) other equally or less qualified employees who were not member of the protected class were promoted.

---

[5](...continued)
manager and Bob Satterfield's demand that Plaintiff take off her "FUBU" shirt.

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

Defendants argue that they are entitled to summary judgment on these failure to promote claims because the positions to which Plaintiff argues she was entitled did not exist. According to Defendants, therefore, Plaintiff has failed to demonstrate that she "sought" the promotion, was "rejected" for the promotion, and no other person outside her protected class received the promotion. This Court disagrees.

With respect to Plaintiff's first failure to promote claim, the uncontested facts indicate that Plaintiff's supervisor was leaving the company and Defendants had to select an employee to take over her supervisor's responsibilities. Regardless of the title selected for the position and the other duties that fell within the job description, Plaintiff has set forth facts that arguably support her claim that she was equally or more qualified than Bob Satterfield to take over her supervisor's duties. As for Plaintiff's second claim, Plaintiff set forth sufficient facts to overcome Defendants' argument that no person outside her protected class received a promotion. This Court finds, therefore, that genuine issues of material fact exist on Plaintiff's failure to promote claims. Defendants' request for summary judgment on these claims is denied.

Plaintiff's disparate treatment claims arise out of Defendants' failure to award her a wage increase immediately after her July 1, 2000 promotion to Quality Control Inspection Manager, Defendants' decision to award her a two percent (2%) merit increase in January 2001, Defendants' failure to award her a raise in September 2001, and Defendants' failure to provide her with a salary equal to that of other directors in the Quality Control

Department.   To prevail under a Title VII claim of disparate treatment based on compensation, an employee must establish a prima facie case of discrimination, and then rebut any articulated, legitimate nondiscriminatory reasons offered by an employer for its payment decisions.  See e.g., Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-254 (discussing generally the burden shifting analysis for disparate treatment claims under Title VII).  The burden of proving a discriminatory motive always remains with the plaintiff-employee.  Id.

Because Plaintiff admitted that other similarly situated employees within her protected class never received wage increase delays when they were promoted and Plaintiff failed to rebut Defendants' plausible explanation that her delayed wage increase in July 2000 was caused by the pending acquisition of the company, Defendants are entitled to summary judgment on this claim.  Defendants also are entitled to summary judgment with respect to the January 2001 merit increase claim and Plaintiff's claim based on her failure to receive a pay raise in September 2001.  Plaintiff failed to  identify any similarly situated employee outside of her protected class that received a more favorable employee evaluation than her or a pay raise that she was denied.  Defendants are not entitled to summary judgment, however, on Plaintiff's claim that she received lower wages than the other directors in the Quality Control department.  Plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether these individuals "shared the same type of tasks" that she did. See Miranda v. B&B Grocery Store, Inc., 975 F.2d 1518, 1528 (11th Cir. 1992).

Plaintiff's retaliation claims are based on correspondence that circulated throughout her office announcing that Plaintiff was being demoted, a one-time delay in having her paycheck electronically deposited into her checking account, and Defendants' decision to move her to a smaller office that was not outfitted for a computer until a few months after she moved.[6]  Title VII protects employees only from "adverse employment actions" by an employer taken in retaliation for the employee's exercise of activities protected under Title VII.  See e.g., Gupta v. Florida Board of Regents, 212 F.3d 571, 586-587 (11th Cir. 2000).  The 11th Circuit has held that adverse employment actions are not limited to "ultimate employment decisions" such as termination, failure to hire, or demotion, but that "some threshold level of substantiality" must be met.  Wideman v. Wal-Mart Stores, 141 F.3d 1453, 1456 (11th Cir. 1998); see also Stavropoulos v. Firestone, 361 F.3d 610, 616-617 (11th Cir. 2004).

Because none of the occurrences Plaintiff has identified constitute a "serious or material" alteration of compensation, terms, conditions, or privileges of her employment, they do not constitute adverse employment actions subjecting Defendants to liability under Title VII.  See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that changes in "the terms, conditions or privileges of employment must be serious and material); cf. Gupta v. Florida Board of Regents, 212 F.3d 571, 587-588 (11th Cir. 2000)

---

[6]  Plaintiff also claims that her failure to receive a pay increase in September 2001 constitutes a retaliatory act on the part of Defendants.  According to Plaintiff, the Vice President of Operations informed the entire Quality Control unit that they were to receive pay raises in September 2001.  Because Plaintiff has failed to demonstrate that any employee of Defendants received such a pay increase, this allegation can not be considered an act of retaliation by Defendants.

(holding that no adverse employment action occurred when a college professor was assigned to teach more credit hours than other professors and to teach classes on three different campuses in one semester; was denied an opportunity to teach a desired class during another semester; was prevented from applying for a position after being placed on a search committee for the position; had her visa application with the Immigration and Naturalization Service intentionally delayed by the Dean's office, and had her sexual harassment informal resolution process terminated without notice after she missed one deadline).  Defendants, therefore, are entitled to summary judgment on Plaintiff's retaliation claims.

In accordance with the findings herein, it is ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (Dkt. #53) is **GRANTED in part** and **DENIED in part**.

**DONE** and **ORDERED** in Tampa, Florida on July 29, 2005.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2003\03-cv-2561 Motn Sum Judgment Title VII Race.wpd